## NEACY v. ALLIS.

*(Circuit Court, E. D. Wisconsin. August Term, 1882.)*

1. PATENTS FOR INVENTIONS—REISSUE—NOT VALID.

  Where the claim in a patent was for "bars, B, B, provided with *interlocking knives, d, d,* and operating substantially in the manner set forth," and the claim in the reissue was "in a saw-mill dog, the *combination* of knives, *d, d,* arranged to move past each other in opposite directions and engage with the leg substantially in the manner set forth." *Held,* that the claim in the reissue could not be sustained, as thereby the scope of the original patent was extended to an unauthorized degree.

2. STATE OF ART—RESTRICTION OF INVENTION.

  When the state of the art is such that the field of invention is circumscribed, the invention of a new patentee must necessarily be confined strictly to the description of the article as set forth the specification and claims.

3. INFRINGEMENT—EVIDENCE—SAW-MILL DOGS—PATENTS No. 134,653 AND No. 122,215.

  Patent No. 134,653 does not appear to be infringed by the device manufactured by defendant under patent No. 122,215, and the bill should be dismissed.

In Equity.

*Flanders & Bottum,* for complainant. *W. G. Rainey,* for defendant.

DYER, D. J. This is a suit in equity to restrain the infringement of reissued letters patent No. 6,733, granted to one Henry D. Dann November 9, 1875, for an improvement in saw-mill dogs, and for an account of profits, etc.

The original patent was issued January 7, 1873, is numbered 134,653, and was granted to the patentee by the name of Henry D. Donn. The patent was twice reissued. The first reissue was granted September 29, 1874, is numbered 6,071, and the name of the patentee is therein given as H. D. Dann. This suit is brought upon the second reissue.

The specifications and claims in the second reissue are as follows:

"The nature of my invention consists in the construction and arrangement of a dog for saw-mills, as will be hereinafter more fully set forth. * * * [After reference to annexed drawings, the specifications proceed:] A, represents the case or box in which the knives constituting the dog move out and in. This box or case may either be bolted to the ordinary standard, or may be solid and form the standard; in either case receiving and protecting the knives or parts which form the dog. It guards the knives from the knots and also prevents the last board from springing as the knives draw the logs boards, or scantlings firmly to the standard or box. In the case or box are placed two bars, B, B, which are held in the same by pins, a, a, passing through the sides of the box, and through inclined slots, b, b, in the bars. The opposite ends of the bars, B, B, are, by connecting bars, C, C, connected with a cross-head, D, which is pivoted between projecting ears on the back of the box, and provided with a lever, E, for operating the same. By the movement of the lever, E, in one direction one of the bars, B, B, will move up and the other down, and at the same time they will move outward from the front of the box by the action of the inclined slots, b, b, on the pins, a, a. By the movement of the lever in the contrary direction, the bars, B, B, will be moved in the opposite direction, and at the same time be moved inwardly from the front of the box. To the front edges of the bars, B, B, are secured the knives, d, d, the points of which are bent outwardly, and pointed as shown. The knives of the two bars point towards each other, so that when the bars are moved downward the knives will enter the wood and lock together, preventing the log from slipping down or off from the end of the block, which is often the case when the log is rounded on the under side, when it is to be un-dogged and turned over. The pins, a, a, may be passed through holes in the bars, B, B, and slide in inclined slots in the bars as above described, or the same movement of the bars may be effected by means of eccentrics.

"Having thus fully described my invention, what I claim as new and desire to secure by letters patent is—*First*, in a saw-mill dog, the combination of the knives, d, d, arranged to move past each other in opposite directions and engage with the log substantially in the manner set forth; *secondly*, the combination of the box or case, A, bars, B, B, with interlocking knives, d, d, inclined slots, b, b, pins, a, a, connecting bars, C, C, cross-head, D, and lever, E, all constructed and arranged substantially as and for the purposes herein set forth."

The specifications in the original and both of the reissued patents are substantially the same. In the original patent and the first reissue the second claim is the same as the second claim in the reissue sued upon. But the first claim in the original and first reissue is for "the bars, B, B, provided with interlocking knives, d, d, and operating substantially in the manner and for the purposes herein set forth."

The defendant is making a dog under what is known as the Beckwith patent, which is No. 122,215, and was issued December 26,

1871, a date earlier than the issue of Dann's original patent. The Beckwith invention is described in his specifications as consisting—

"In constructing the standards with wide bearing faces for the logs, and in providing each with a central vertical slot or mortise, through which a series of hooks are projected to grasp the log or cant. The lower hook is curved upward to catch into the lower edge of the log next the standard, and the upper hooks are curved downward to catch into the face of the log. The lower hook, and the series of upper hooks, therefore move in opposite directions to grasp the log between them and prevent it from slipping. The hooks are operated simultaneously by a lever from the back of the standard, and by a suitable system of connecting bars. * * * By this arrangement the upper hooks hold the log securely in contact with the lower hook, while the latter holds it firmly against the standard, and prevents it from slipping until the last board is sawed. By constructing the standards with a wide face, and in arranging the hooks to project through a central slot, a broad bearing is formed for the log upon each side of the hooks, so that when the log is reduced to the thickness of two or three boards, the latter are held securely against bending while being sawed."

The specifications then proceed by reference to accompanying drawings, to designate and point out the different parts of the device. The drawings show several hooks moving downward and but one hook moving upward. The defendant constructs the device which he is manufacturing and selling with several hooks moving upward as well as downward, and herein there is a variation from the form of the device as described in the drawings annexed to the Beckwith patent. But it is plain that the mere addition of hooks, either moving upward or downward, does not constitute invention; and I think that a device made like that invented by Beckwith, with only the variation therefrom of additional hooks moving either way, is protected by the Beckwith patent, if that patent has not been anticipated by inventions claimed to have been earlier in the field. It is contended by the complainant that, although Dann's patent is of a later date than the Beckwith patent, he invented his dog before Beckwith made his invention, hence that the Dann dog must be held to have preceded the Beckwith dog. But I am not satisfied, upon the testimony in this case that such is the fact. On the contrary, I am strongly inclined to the opinion, in the light of the testimony here adduced, that Beckwith was in advance of Dann in this line of invention. Then, admitting the Dann dog to be an improvement upon the Beckwith dog, I am not satisfied that the device made and sold by the defendant, Allis, is an infringement of the Dann, mechanism. It is to be noticed that all the several parts constituting these dogs are old. The idea of holding logs or a cant, while in the process of sawing, by means of

hooks or teeth fastened to bars and projected forward into the log or cant, was not new when Dann invented his device. It may, I think, be truthfully stated that the prior state of the art was such that the field of invention was circumscribed, and therefore the invention of a new patentee must necessarily be confined strictly to the description of article as set forth in his specifications and claims.

The mechanism of the Dann device, and that of the dog made by Allis under the Beckwith patent, are in some respects quite similar, but in other material parts are dissimilar. In the Beckwith or Allis dog the teeth are curved in the form of hooks. In the Dann device the teeth have the form of chisels, and are so peculiarly arranged with reference to their connection with the bars, that they pass each other or interlock in entering and taking hold of the log or cant. The hooks in the two devices move upon different angles, and the manner in which they are fastened to their different attachments is dissimilar. The shape of the hooks in the Dann device, and their movement under pressure of the lever, is evidently a vital feature of his invention. While in a certain sense the hooks in the Allis dog may pass each other as they are projected into the log or cant, they do not pass each other, or exhibit the element of interlocking, as do the chisel teeth in the Dann dog.

While the position was taken on the argument that the defendant's dog is an infringement of the second claim of Dann's second reissue, the court did not understand this to be urged with much confidence. And it seems to me very clear that the Allis dog is not an infringement of that claim. The stress of the case really lies in the first claim of that reissue; and in view of the fact that in the prior state of the art Dann and claimants under him must be limited to the specific device for which he obtained a patent, and as there are peculiar and marked variations in the construction of the two dogs in question, I am constrained to think that upon the question of infringement the complainant has failed to establish his case. But, apart from the question of infringement, the court is of the opinion that the first claim of Dann's second reissue is void, as showing an unauthorized expansion of the first claim in his original patent and first reissue. In both the original and first reissue the first claim is: "The bars, B, B, provided with interlocking knives, *d, d,* and operating substantially in the manner and for the purposes herein set forth." Thus it will be noticed that the invention here claimed consists of *the bars* provided with interlocking knives and operating as described. The bars described in the specifications, and the knives so adjusted that

when they enter the wood they will lock together, are the elements here claimed.

Now, in the first claim of the second reissue, no reference is made to bars. The word "interlocking" is dropped from the claim, and its language is: "In a saw-mill dog, the combination of knives, d, d, arranged to move past each other in opposite directions and engage with the log, substantially in the manner set forth." Here the claim is made to cover a combination of the knives, that combination being arranged so that the knives will move past each other in opposite directions, and engage with the log. Thus it seems to me apparent that in the first claim of the original patent and the first reissue, when considered in connection with the specifications, the means are pointed out by which the interlocking knives are made operative, namely, by means of their connection with bars which are connected with the box or case in the manner set forth in the specifications. But in the first claim of the second reissue bars are dispensed with. What the patentee there claims is merely a combination of knives arranged to move past each other in opposite directions. And this is a claim which certainly covers more ground than the first claim in the original and first reissue. Under the first claim in the second reissue, so far as its language is concerned, any means may be employed by which there may be such an arrangement of the combination of knives as will enable them to move past each other and engage with the log. It is true, at the end of this claim there are the words "substantially in the manner set forth," but I do not think these words are equivalent to the words "by the means set forth." The meaning of the claim, as I understand its true construction, is that the combination of knives shall be so arranged as to enable the knives to move past each other and engage with the log in the manner set forth; that is, that they shall pass each other and engage, etc., in the manner set forth.

It is not necessary under this claim, as it is under the first claim in the original and first reissue, that the combination of knives shall be arranged, in connection with the bars described, to move past each other in their operation. Any means under this claim, as I have before stated, for aught that appears in the claim, may be employed in moving the combination of knives so that they shall pass each other, or, as stated in the specifications, "enter the log and lock together." And I have a strong conviction that this claim was put in this form, not for the mere purpose of avoiding any ambiguity arising from the term "interlocking," which was used in the first

claim of the original patent and first reissue, but to broaden if possible the scope of Dann's invention, and make it cover more than his original patent was intended to cover. It will not be forgotten that the language of the first claim in the first reissue is the same as that of the same claim in the original patent. The original patent was granted in January, 1873, and it was not until November 9, 1875, that the second reissue was obtained; and then the language of the first claim was changed, and thereby I think the scope of the patent was extended to an unauthorized degree, within the latest rulings of the supreme court upon the question. In the second claim the bars are claimed as part of the combination, and their omission from the first claim, and the statement there made, embracing generally and broadly a combination of the knives arranged to move past each other and engage with the log in the manner set forth, I think indicate a purpose by sweeping terms to make any improvements in the structure of saw-mill dogs, occurring after the issue of the original patent, subservient to this second reissue, and this the supreme court has decisively held cannot be done.

I am of the opinion, therefore, that the first claim of the second reissue, upon which this suit is based, is void, and the bill will be dismissed.